UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESS'NN AUBERT,<br><br>        Plaintiff,<br><br>vs.<br><br>C/O ROBLES,<br><br>        Defendant. | Case No. 1:10 cv 00565 LJO GSA PC<br><br>FINDINGS AND RECOMMENDATION RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF NO. 26)<br><br>OBJECTIONS DUE IN THIRTY DAYS |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).[1] Plaintiff has opposed the motion.[2]

**I.    Claims**

This action proceeds on the original complaint filed April 1, 2010. Plaintiff, an inmate in the custody of the California Department of Corrections and Rehabilitation (CDCR) at Kern Valley State Prison (KVSP), brings this action against Defendant Hector Robles, a correctional

---

[1] On November 18, 2010, the Court issued and sent to Plaintiff the summary judgment notice required by Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (ECF No. 12). On July 26, 2012, Plaintiff was provided further notice and an opportunity to file an amended opposition pursuant to Woods v. Carey, 684 F.3d 934 (9th Cir. 2012).

[2] Plaintiff's complaint is signed under penalty of perjury, and will therefore be considered an affidavit in opposition to the motion for summary judgment. A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief. McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987)(per curiam); Lew v. Kona Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985); F.R.C.P. 56(c)(4).

1

officer employed by the CDCR at KVSP. Plaintiff claims that he was subjected to excessive force in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.

Plaintiff alleges that on August 7, 2009, while restrained, Defendant Robles placed Plaintiff in a holding cage. Defendant Robles "commenced assaulting me by slamming my face in to the back of the cage as he struck me with his knee to my left torso and left leg, this assault caused great bodily injury." (Compl. ¶ IV.) Plaintiff's complaint, liberally construed, alleges that while restrained and offering no resistance, Defendant Robles physically attacked Plaintiff, causing him injury.

## II.     **Summary Judgment Standard**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denial of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under governing law, Anderson, 477 U.S. at 248; Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

2

nonmoving party, Matsushita, 475 U.S. at 588; County of Tuolumne v. Sonora Community Hosp., 263 F.3d 1148, 1154 (9th Cir. 2001).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." Giles v. Gen. Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007). Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's notes on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam)). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985)(aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

### III. **Excessive Force**

The Eighth Amendment prohibits those who operate our prisons from using "excessive physical force against inmates." Farmer v. Brennan, 511 U.S. 825 (1994); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982)(prison officials have "a duty to take reasonable steps to protect inmates from physical abuse"); see also Vaughan v. Ricketts, 859 F.2d 736, 741 (9th Cir. 1988),

3

cert. denied, 490 U.S. 1012 (1989)"Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society." Farmer, 511 U.S. at 834.

Whenever prison officials are accused of using excessive physical force in violation of the Eighth Amendment prohibition against cruel and unusual punishment, the core judicial inquiry is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Hudson v. McMillian, 503 U.S. 1, 607 (1992). Force does not amount to a constitutional violations if it is applied in a good faith effort to restore discipline and order and not "maliciously and sadistically for the very purpose of causing harm." Whitley v. Albers, 475 U.S. 312, 320-21 (1986); Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002). Under the Eighth Amendment, the court looks for malicious and sadistic force, not merely objectively unreasonable force. Clement, 298 F.3d at 903.

## IV.  Injury

Defendant argues that Plaintiff's injuries "do not evidence that Robles acted maliciously and sadistically for the purpose of causing harm." Defendant attaches as Exhibit B to the declaration of Diane Esquivel a Medical Report of Injury or Unusual Occurrence. Defendant also refers to Plaintiff's Response to Requests for Admissions, 24-25 and 34. This evidence establishes that medical staff saw Plaintiff and noted that he had a cut or laceration on his chin. No other injuries were noted, and Plaintiff did not sustain any permanent injury as a result of the incident at issue.

The Prison Litigation Reform Act provides that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental and emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § e(e). The physical injury "need not be significant but must be more than *de minimis*." Oliver v. Keller, 289 F.3d 623, 627 (9th Cir. 2002).

However, the relevant inquiry is not whether Plaintiff's injuries are *de minimis*, but whether the use of force was *de minimis*. See Wilkins v. Gaddy, 559 U.S. 34, 37 (2010)("Injury and force … are only imperfectly correlated, and it is the latter that ultimately counts.") The

4

degree of Plaintiff's injuries only serves as evidence of the degree of force used, it does not conclusively resolve the question of whether the degree of force was *de minimis*.  See Wilkins, 559 U.S. at 37 ("The extent of injury may . . . provide some indication of the amount of force applied.")  Defendant cannot escape liability for the use of force simply because Plaintiff failed to suffer any treatable injury.  "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."  Id.; Hudson, 503 U.S. at 9 ("In the excessive force context, society's expectations are different.  When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated.  This is true whether or not significant injury is evident.") (internal citations omitted).  This case therefore turns on whether force was used in a good faith effort to restore order and maintain discipline, or sadistically and maliciously for the purpose of causing harm.  The extent of Plaintiff's injury will be a factor on determining whether the force used by Robles was excessive.

## V.      Defendant's Evidence

Defendant supports his motion with his own declaration.  Regarding the events at issue, Defendant declares that:

> On August 7, 2009, I was a yard officer on Facility A at KVSP.
>
> At approximately 12:30 p.m., I was assigned to escort inmate Aubert (V-77688) to the administrative segregation unit (ASU). He was being placed in administrative segregation after he punched an officer during an incident that morning.  Officers had to pepper spray and use a baton on Aubert to gain control of him.  I saw this earlier incident.
>
> Aubert and I walked from Facility A to the ASU.
>
> When we entered the rotunda of the housing unit, Aubert made a comment about not removing his hair braids in the ASU.  I informed Aubert that he was required to follow ASU regulations like everyone else.
>
> Sergeant Pickett, who as assigned to the ASU, walked in front of us, opened the door to the holding cell, and continued walking down the hallway.

5

>Aubert and I approached the entrance of the holding cell.  I was to the left of Aubert, but maintained control of him by holding his left-forearm area with my right hand.
>
>As Aubert was about to step into the holding cell, he said, "Man, I ain't doing a goddam thing," or words to that effect.
>
>Aubert then pushed his upper body back into my hands while simultaneously thrusting his head backwards.
>
>To avoid being injured and to stop Aubert's resistive behavior, I put my left hand in the middle of Aubert's upper back and pushed him forward into the holding cell.
>
>A holding cell is approximately two feet deep and two-and-a-half feet in width.
>
>I held Aubert up against the back of the holding-cell wall by maintaining my left hand on his upper back.
>
>I ordered Aubert to stop his resistive actions, and he complied.
>
>Pickett returned to the holding cell, closed the door, and removed Aubert's handcuffs.
>
>Upon removing his handcuffs, Aubert immediately yelled that he needed a nurse because his jaw was broken or words to that effect.
>
>Pickett told Aubert to calm down and that he would summon a nurse.
>
>The entire incident lasted only a few seconds.
>
>I had no further interaction with Aubert after he was secured in the holding cell.
>
>I did not punch, kick, strike, or hit Aubert.  I did not slam Aubert's head or face against the back of the holding-cell wall, and I did not hit him with my knees.
>
>I used only that amount of force necessary to maintain control of him, prevent him from striking me with his head, and to stop his resistive behavior.
>
>I did not use force on Aubert for any purpose other than to stop his resistive conduct.

(Robles Decl. ¶¶2-21).

The Court finds that Defendant has met his burden on summary judgment.  Defendant's declaration establishes that Defendant used force in a good faith effort to restore discipline and

maintain order.  Specifically, Defendant's evidence establishes that he pushed Plaintiff back into the holding cell in order to avoid being injured by Plaintiff and to stop Plaintiff's resistive behavior.  Defendant declares that he did not use any other force on Plaintiff, and did not use force on Plaintiff for any purpose other than to stop his resistive conduct.  The burden shifts to Plaintiff to come forward with evidence of a triable issue of fact – evidence that Defendant used force on Plaintiff sadistically and maliciously for the purpose of causing harm.

>   Plaintiff submits his own declaration in support of his opposition.  Plaintiff declares the following:
> 
> > On August 7, 2009, I was housed as an inmate on Facility A yard at KVSP.
> >
> > At approximately 12:30 p.m. , I was escorted to the administrative segregation unit (ASU) for an earlier incident which involved a correction officer.
> >
> > While being escorted to (AdSeg) holding cage Plaintiff was subjected to a use of unnecessary force by correctional officer H. Robles.
> >
> > While entering the holding cage Plaintiff was grabbed by the back of the head by the pony tails or one of the pony tails that lead my chin to be in the air then slammed in the back of the cage and was then struck with a knee to my left torso area and left leg.  Causing injury as a result.
> >
> > Plaintiff never had a resistive behavior.

(Pltf.'s Decl. ¶¶ 2-6).

The Court finds that Plaintiff has met his burden on summary judgment.  Plaintiff has come forward with evidence that establishes a triable issue of fact.  Plaintiff's declaration establishes that Defendant grabbed him by the hair and slammed him into the back of the holding cage. Defendant then struck Plaintiff with his knee in his torso, causing Plaintiff injury.  Plaintiff's declaration establishes that he was not offering any resistance.   As noted above, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  <u>Matsushita</u>, 475 U.S. at 587.  Because there is a triable issue of fact as to whether Defendant

7

used force in a good faith effort to restore discipline and maintain order, or sadistically and maliciously for the purpose of causing harm, Defendant's motion for summary judgment should be denied.

V.     **Qualified Immunity**

Defendant further argues that he is entitled to qualified immunity from suit.  Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzerald, 457 U.S. 800, 818 (1982).  "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'"  Saucier v. Katz, 533 U.S. 194, 200 (2001)(quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223, 233 (2009)).  In applying the two-part qualified immunity analysis, it must be determined whether, "taken in the light most favorable to [Plaintiff], Defendant's conduct amounted to a constitutional violation, and . . . whether or not the right was clearly established at the time of the violation."  McSherry v. City of Long Beach, 560 F.3d 1125, 1129-30 (9th Cir. 2009).  These prongs need not be addressed by the Court in any particular order.  Pearson, 555 U.S. at 233.   "The relevant dispositive inquiry . . .  is whether it would be clear to a reasonable officer that his conduct was unlawful "in the situation he confronted."  Norwood v. Vance, 591 F.3d 1062, 1068 (9th Cir. 2010).

Defendant Robles argues that he is entitled to qualified immunity under both prongs of Saucier.  Defendant argues that he used only that force necessary to maintain control of Plaintiff after Plaintiff resisted being placed in the holding cell and almost injured Defendant. Defendant argues that assuming he did violate Plaintiff's constitutional rights by using force to restrain him inside the holding cell, he was confronted with a violent, resistive, and uncooperative inmate, who suddenly and without warning jerked his head backwards and pushed into Defendant.  Combined with the fact that Plaintiff had already battered another correctional officer earlier that day, a reasonable officer in Defendant's position would have perceived

Plaintiff's actions as a threat.  The use of force was therefore necessary to take control of Plaintiff and to prevent the situation from escalating.

Defendant's argument, however, turns on the fact that Plaintiff initiated the attack and was resistive.  Plaintiff's declaration establishes that he was not resistive, and that Defendant's use of force was gratuitous.  In determining whether summary judgment is appropriate, we must view the evidence in the light most favorable to the non-moving party.  Huppert v. City of Pittsburg, 574 F.3d 696, 701 (9th Cir. 2009).  The Court finds that a correctional officer would reasonably believe that pulling on a non- resistive inmate's pony tail and slamming him into the back of the holding cell, causing injury,  violates a clearly established right.  Defendant Robles is therefore not entitled to qualified immunity.  The Court must credit Plaintiff's evidence, and draw all reasonable inferences in Plaintiff's favor.  The Court finds that there is a triable issue of fact regarding who initiated the use of physical force.  Defendant's motion should therefore be denied.

Accordingly, IT IS HEREBY RECOMMENDED that Defendant's motion for summary judgment be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S. C. § 636(b)(1)(B).  Within thirty days after being served with these findings and recommendations, plaintiff may file written objections with the Court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time waives all objections to the judge's findings of fact.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1988).  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **November 14, 2013**

**/s/ Gary S. Austin**

UNITED STATES MAGISTRATE JUDGE